# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

90

CA 11-00643

PRESENT: CENTRA, J.P., FAHEY, PERADOTTO, CARNI, AND MARTOCHE, JJ.

---

PATRICIA KARAM, AS ADMINISTRATRIX OF THE ESTATE
OF TONY KARAM, DECEASED, AND PATRICIA KARAM,
INDIVIDUALLY, PLAINTIFF-APPELLANT,

V                                          MEMORANDUM AND ORDER

ADIRONDACK NEUROSURGICAL SPECIALISTS, P.C.,
ET AL., DEFENDANTS,
ST. ELIZABETH MEDICAL CENTER AND TIMOTHY EDWARD
PAGE, DEFENDANTS-RESPONDENTS.

---

POWERS & SANTOLA, LLP, ALBANY (MICHAEL J. HUTTER OF COUNSEL), MARK L.
BODNER, PC, NEW YORK CITY, FOR PLAINTIFF-APPELLANT.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., SYRACUSE (LAURENCE F. SOVIK OF
COUNSEL), FOR DEFENDANTS-RESPONDENTS.

---

Appeal from a judgment of the Supreme Court, Oneida County
(Bernadette T. Clark, J.), entered December 7, 2010 in a medical
malpractice and wrongful death action. The judgment dismissed the
complaint.

It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed without costs.

Memorandum: Plaintiff, as administratrix of the estate of Tony
Karam (decedent) and individually, appeals, as limited by her brief,
from a judgment insofar as it dismissed the complaint against St.
Elizabeth Medical Center (Hospital) and Timothy Edward Page
(collectively, defendants), following a jury verdict in favor of all
defendants in this medical malpractice and wrongful death action. We
note at the outset that plaintiff failed to raise any issues with
respect to the judgment insofar as it dismissed the complaint against
defendants Adirondack Neurosurgical Specialists, P.C. and Walter
George Rusyniak, Jr., and we therefore deem any such issues abandoned
(*see Ciesinski v Town of Aurora*, 202 AD2d 984).

Decedent sustained a head injury and was taken to the Hospital,
where he was admitted at 10:26 A.M. and examined by Page, an emergency
physician, at approximately 11:01 A.M. Although decedent appeared
neurologically normal at that time, Page ordered a head CT scan. The
CT scan, which was performed between 11:39 A.M. and 11:46 A.M.,
revealed a subdural hematoma, but no evidence of midline shift or mass
effect. Decedent had sustained prior subdural hematomas in 2001 and

2005.

At 12:05 P.M., after reviewing the CT scan results, Page telephoned Rusyniak, who was the neurosurgeon on call at the time although he was away from the Hospital, and informed him that decedent had a small subdural hematoma and was neurologically normal. At some point, Page became aware that decedent's neurological condition was deteriorating. He reported that development to Rusyniak at 12:58 P.M., and Rusyniak ordered a second CT scan. The second CT scan demonstrated that the hematoma had grown much larger, and midline shift and mass effect were visible. Rusyniak performed a craniotomy to remove the hematoma, and decedent never regained consciousness after the operation.

According to plaintiff, defendants were negligent in, inter alia, failing to apprise Rusyniak of changes in decedent's condition in a timely manner. The trial focused on the time at which decedent began to deteriorate neurologically. A note in decedent's emergency room record entered by nurse Richard Dodge, reportedly at 11:23 A.M., stated that decedent was vomiting and starting to complain of a severe headache and that he was beginning to deteriorate in condition. That note described decedent's speech as "clear" and "[n]ormal," and his skin as "warm [and] dry," but the note also described his skin as "[m]oist [and] sweaty." Several witnesses testified for plaintiff that decedent began to deteriorate between 11:00 A.M. and 11:30 A.M. Page testified that the Hospital's computer system had been in place for only a few months at the time decedent was treated and that Dodge's note was inconsistent. He stated that it sometimes appeared "as if there were gremlins in [the] computer system." Page further testified that it was possible that some of the entries for the 11:23 A.M. note had in fact been made at 12:35 P.M. Counsel for defendants admitted that, by procuring such testimony from Page, he was impeaching in part defendants' own record.

Counsel for defendants subsequently attempted to introduce an "audit trail" of the computer system establishing that much of the 11:23 A.M. note was made at a later time. Supreme Court expressed its concern that the attempt to introduce the audit trail constituted "unfair surprise" and "trial by ambush." In response, defendants' counsel indicated that the proper remedy would be to grant a mistrial. Plaintiff's counsel opposed that remedy and instead requested that the court impose monetary sanctions against defendants' counsel. The court denied defendants' request to allow evidence of the audit trail and for a mistrial and declined to impose sanctions. Earlier in the trial, the court had denied plaintiff's request for a cautionary instruction that any belated evidence introduced concerning the computer "gremlins" should be disregarded by the jury. The jury ultimately returned a verdict finding no negligence on the part of any defendant.

Plaintiff failed to preserve for our review her contention that defendants' presentation of evidence regarding computer problems with respect to the 11:23 A.M. note denied her a fair trial. Plaintiff did not seek an adjournment of the trial or a mistrial (*see Romeo v*

*Haranek*, 15 AD2d 588, 589; *see also Oubre v Carpenter*, 241 AD2d 964). Indeed, plaintiff opposed defendants' request for a mistrial (*see Boyd v Manhattan & Bronx Surface Tr. Operating Auth.*, 79 AD3d 412, 413). We decline to grant plaintiff the relief she now seeks when that relief was available during trial.

Plaintiff's further contention that the court erred in allowing a witness to recant his testimony is without merit (*see generally Matter of Alarcon v Board of Educ. of S. Orangetown Cent. School Dist.*, 85 AD3d 780, 781, *lv denied* 18 NY3d 803). Plaintiff failed to preserve for our review her contention that the summation of defendants' counsel was improper (*see Short v Daloia*, 70 AD3d 1384, 1384-1385). We decline to address that contention in the interest of justice, although we note that the behavior of defendants' counsel was reprehensible. The tactics of counsel, including his inflammatory comments on summation, "can hardly be considered a service to his clients and certainly constitute[] a disservice to the court" (*Mena v New York City Tr. Auth.*, 238 AD2d 159, 160).

Entered:  March 23, 2012                    Frances E. Cafarell
                                            Clerk of the Court